**SENECA CONSTITUTIONAL RIGHTS ORGANIZATION, by Charles Williams, President, et al., Plaintiffs,**

**v.**

**James E. GEORGE, Jr., President of Seneca Nation of Indians, et al., Defendants.**

**Civ. No. 1972-152.**

United States District Court, W. D. New York.

Aug. 9, 1972.

Omar Z. Ghobashy, New York City, for plaintiffs.

Fried, Frank, Harris, Shriver & Kampelman, Washington, D. C. (Arthur Lazarus, Jr., Washington, D. C., of counsel), for defendants James E. George, Jr., Barry Snyder, Phoebe Crouse, Robert Hoag and Wayne Abrams.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y. (Stephen H. Kelly, Buffalo, N. Y., of counsel), for defendant Fisher-Price Toys, Inc.

CURTIN, District Judge.

Alleging violations of 42 U.S.C. §§ 1981 to 1987[1] and 25 U.S.C. § 1302(5) and (8), the plaintiffs seek declaratory and injunctive relief and monetary damages against named officials of the Seneca Nation of Indians [hereinafter referred to as "the Seneca defendants"], and against the Fisher-Price Toys Division of the Quaker Oats Company [hereinafter referred to as "Fisher-Price"].

In a decision entered May 25, 1972, 348 F.Supp. 48, the court denied the plaintiffs' application for a preliminary injunction. The court also held that congressional enactment of 25 U.S.C. § 1302 implicitly waived the quasi-sovereign immunity of Indian tribes from suit in actions alleging violations of the section, but that the immunity doctrine would bar relief against a tribe for violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1986. The court further determined that the instant action was one against the Seneca Nation itself insofar as it sought declaratory and injunctive relief against the Seneca defendants, and that therefore such relief against the Seneca defendants for violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1986 was barred. Although it follows that the complaint states no claim of violations of these sections upon which declaratory and injunctive relief against the Seneca defendants can be granted, the court did not explicitly so hold. Indeed, the court did not discuss the question whether the complaint states a claim upon which relief can be granted. *Compare* Luxon v. Rosebud Sioux Tribe, 455 F.2d 698 (8th Cir. 1972).

Following the court's decision, the Seneca defendants moved for summary judgment. Fisher-Price joined in the motion and also sought an order dismissing the complaint for failure to state a claim upon which relief can be granted. At oral argument on August 4, 1972, the Seneca defendants reiterated the defense of failure to state a claim upon which relief can be granted, which had been raised in their answer.

In support of their motion for summary judgment, the Seneca defendants submitted affidavits which establish the following material facts as to which there is no genuine issue. In view of the court's disposition of the case, a statement of these facts is not necessary and is made only to describe the background of the litigation.

The Seneca Nation of Indians is a tribe of American Indians located on the A'legany, Cattaraugus and Oil Springs Reservations. The Constitution of the Seneca Nation, adopted November 15, 1898, vests legislative power in a Council of 16 members, executive power in a President and, subject to appeal to the Council, judicial power in Peacemakers and Surrogates Courts. The court takes judicial notice of the Seneca Constitution and the provisions thereof.

The Seneca Council has recently engaged in planning the expansion of an industrial park established in 1965 on the Cattaraugus Reservation. In the fall of 1971, the Council and Fisher-Price entered into negotiations for the location of a toy factory in the expanded industrial park. The negotiations resulted in an agreement under which the Seneca Nation would lease to Fisher-Price for a period of 25 years approximately 55 acres of land upon which the plant would be constructed. On April 8, 1972, the Council authorized execution of the agreement and a lease, but the documents have not yet been signed.

The toy factory contemplated by the agreement would cost $6,000,000. Under the agreement, the Seneca Nation would apply to the federal Economic Development Administration for a grant in the amount of $1,300,000 for development of the expanded industrial park. It would also invest in the development of the expanded park additional funds, estimated to amount to $250,000, avail-

---

[1]. Sections 1984 and 1987 do not create causes of action, and they will not be discussed further in this decision.

able to it under Section 4 of the Seneca Rehabilitation Act of 1964, Pub.L. No. 88–533, § 4, 78 Stat. 738. In addition, the Nation would apply to the Economic Development Administration for a loan in the amount of $3,900,000 to finance 65% of the cost of the factory.[2] Fisher-Price would invest the remaining 35%, or $2,100,000. The Nation would have title to the plant and unencumbered ownership at the end of the lease period, during which time it would receive an annual rental fee of approximately $40,-000.

On May 13, 1972, the Seneca Council enacted an ordinance for the acquisition of property in connection with the expansion of the industrial park. The ordinance provides procedures for condemnation of land and vests jurisdiction over such proceedings in the Peacemakers Court. Under the ordinance, the Court cannot exercise jurisdiction unless the Nation shows that it has made a good faith effort to negotiate for the purchase of the property at a fair valuation thereof.

On June 10, 1972, the Council adopted a resolution authorizing the acquisition by condemnation of the use interests in a parcel of land which it deems to be required for the expansion of the industrial park. The use interests are held by Lillian Kennedy and Mary Kennedy, two of the plaintiffs in this action. Each of the Kennedys has an undivided interest in half of the parcel. No proceedings to condemn the Kennedy interests have as yet been instituted.[3]

As the court noted in its earlier decision, the plaintiffs' complaint is a confusing document. Because it fails to set forth separate claims for relief each alleging a violation of a particular statutory provision, one is forced to extrapolate the claims made therein. Several of the claims can be disposed of in short order.

Before turning to a discussion of the individual claims, however, the court again notes that its earlier decision established that the complaint does not state a claim of violations of 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1986 upon which declaratory and injunctive relief can be granted against the Seneca defendants.

## Sections 1981 and 1982

The complaint states no claim of violations of 42 U.S.C. §§ 1981 and 1982 upon which relief can be granted against any of the defendants. The sections prohibit only racially motivated deprivation of the rights enumerated therein. *See* Jones v. Alfred H. Mayer, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Schetter v. Heim, 300 F.Supp. 1070, 1073 (E.D.Wis.1969). The complaint, however, contains no allegation of racial discrimination. In addition, the complaint contains no allegation that any of the rights protected by 42 U.S.C. § 1981 have been violated.

## Section 1983

The complaint states no claim of violations of 42 U.S.C. § 1983 upon which relief can be granted against any of the defendants. There is no allegation that Fisher-Price is acting under color of state law. Although there are

2. The Seneca Council, on November 13 and December 11, 1971, authorized applications to the Economic Development Administration for the public works grant and the business development loan contemplated in the Fisher-Price agreement. Both applications are still pending.

3. There is a dispute between the parties over Mary Kennedy's situation. The Seneca defendants contend that her interest has been acquired by negotiation, while the plaintiffs assert that the interest was acquired by fraud. Even if the defendants had induced the sale by fraud, there would be no violation of Mrs. Kennedy's constitutional rights, and she would be left to remedies available to her under state law.

allegations that the Seneca Nation is an instrumentality of the State of New York and that the Seneca defendants are therefore acting under color of state law, the court as a matter of law fails to find the state action requisite to a claim under 42 U.S.C. § 1983. The Seneca Nation is a tribe of American Indians which antedates the State of New York. Like other tribes, the Seneca Nation is a quasi-sovereign entity possessing all the inherent rights of sovereignty except where restrictions have been placed thereon by the United States itself. *See* United States v. Kagama, 118 U.S. 375, 381, 6 S.Ct. 1109, 30 L.Ed. 228 (1886). There may be dispute over whether in certain circumstances an Indian tribe is an instrumentality of the federal government. *Compare* Groundhog v. Keeler, 442 F.2d 674, 678 (10th Cir. 1971), with Colliflower v. Garland, 342 F.2d 369, 379 (9th Cir. 1965) (habeas corpus). But certainly an Indian tribe is not a state. *See* United States v. Kagama, *supra,* at 381, 6 S.Ct. 1109; Native American Church v. Navajo Tribal Council, 272 F.2d 131, 133–34 (10th Cir. 1959). Indeed an Indian tribe is not subject to the law of a state except so far as the United States has given its consent. Worcester v. Georgia, 6 Pet. (U.S.) 515, 560, 31 U.S. 515, 8 L.Ed. 483 (1832); United States v. Forness, 125 F.2d 928, 932 (2d Cir. 1942). *See* Haile v. Sannooke, 246 F.2d 293, 297–98 (4th Cir. 1957). In particular, the United States has paramount authority over Indian tribes in the State of New York, notwithstanding New York's status as one of the original 13 colonies, and, when New York legislates in relation to the affairs of Indians in the state, it does so subject to the overriding authority of federal government. *See* Tuscarora Nation of Indians v. Power Authority, 257 F.2d 885, 888–91 (2d Cir. 1958), rev'd on other grounds, 362 U.S. 99, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960). In light of this case law, it cannot be said either that the Seneca Nation is a state instrumentality or that the Seneca defendants are acting under color of state law.

### Section 1985

The complaint also attempts to state a claim under 42 U.S.C. § 1985. Only 42 U.S.C. § 1985(3) is even potentially applicable to the case. To come within the subsection, a complaint must allege that the defendants did (1) "conspire" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws" and that one or more of the conspirators (3) did or caused to be done "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3); Griffin v. Breckenridge, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

The paragraph of the complaint alleging conspiracy reads as follows:

*TENTH:* Defendants, including both public officials and private persons, acted jointly and separately and conspiratorily and they did conspire with each other with respect to the above stated activieies [sic] with intent to discriminate against plaintiffs which deprived plaintiffs of their federal Constituional [sic] rights, equal protection of the laws, equal privileges and immunities under the laws and due process of law, as said conspirators did or caused to be done to take individual owners [sic] lands, to lease it to the corporate defendant, to build a toy factory, to the detriment of plaintiffs and without concern for their interest, safety, welfare and rights and with purposeful intent to discriminate against plaintiffs and those similarly situated who are North American Indians enrolled Senecas, to

benefit the corporate defendant by tax exempt status, loans from the U.S. and other benefits on behalf of Indians, and by use of cheap Indian labor, not taking into consideration the wishes of the people concerned and in complete disregard to their rights and the experience of the ill fated pillow factory which is now closed as a result of the inexperience and premature decision of the defendants who are officers of the Seneca Nation. As a result plaintiffs were injured in their person and property.

■ This paragraph is deficient in at least two respects. First, as in Powell v. Workmen's Compensation Board, 327 F.2d 131, 137 (2d Cir. 1964), the plaintiffs have done no "more than merely state vague and conclusory allegations respecting the existence of a conspiracy" and have failed "to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." Second, while the plaintiffs make conclusory statements as to the defendants' intent to discriminate against them, they do not make any factual allegations indicating "a purposeful discrimination between persons or classes of persons." Snowden v. Hughes, 321 U.S. 1, 10, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944). *Compare* Griffin v. Breckenridge, *supra,* at 103, 91 S.Ct. 1790 (complaint contained allegations supporting "animus to deprive petitioners of the equal enjoyment of legal rights because of their race"). In other words, the plaintiffs make no allegations sufficient to raise the question whether the defendants acted with the purpose of causing invidious discrimination against them. *See* Powell v. Workmen's Compensation Board, *supra,* at 137. As was the case in McManigal v. Simon, 382 F.2d 408 (7th Cir. 1967), the plaintiffs' allegation simply shows a dispute among members of an organization with respect to disposition of assets, and no claim of a violation of 42 U.S.C. § 1985(3) is stated upon which relief can be granted against any of the defendants.

## Section 1986

As the plaintiffs state no claim under 42 U.S.C. § 1985, it follows that they assert no ground for relief under 42 U.S.C. § 1986. Post v. Payton, 323 F.Supp. 799, 802 (E.D.N.Y.1971).

## Section 1302

The complaint purports to state claims of violations of 25 U.S.C. § 1302(5) and (8) by the Seneca defendants. Section 1302 provides that "[n]o Indian tribe in exercising powers of self-government shall . . . (5) take any private property for a public use without just compensation . . . [or] (8) deny to any person within its jurisdiction the equal protection of the laws or deprive any person of liberty or property without due process of law."

Read broadly, the complaint attempts to state five claims of violations of 25 U.S.C. § 1302:

(1) That the provision in the Seneca Constitution permitting appeal of determinations of the Peacemakers Court to the Seneca Council denies the plaintiffs the right to "a fair and impartial trial;"

(2) That the present Seneca Council is illegally constituted in the light of unspecified election irregularities;

(3) That the Seneca Council does not have the power under the Seneca Constitution to authorize entry into the contract with Fisher-Price and to appropriate money to implement the contract;

(4) That the Seneca Nation lacks the power of eminent domain; and

(5) That the condemnation of the Kennedys' use interests in land would be a taking for nonpublic use and without just compensation.

■ It should be noted at the outset of the discussion of these claims that

the jurisdiction of this court under 25 U.S.C. § 1302 is limited to enforcing the prohibitions contained therein. It does not extend to ensuring compliance with provisions of Seneca law, including the Seneca Constitution, by instrumentalities of the Seneca Nation unless failure to comply constitutes a violation of the guarantees enumerated in the section. Likewise, a provision of the Seneca Constitution can be overturned by this court only if it violates the provisions of 25 U.S.C. § 1302.

### (1) Appeals to the Council

■ Section IV of the Seneca Constitution permits appeal of determinations and decisions of the Peacemakers Court to the Seneca Council, with appeals to be heard by a quorum of the Council upon the evidence taken in the Peacemakers Court. Without stating facts in support of the contention, the plaintiffs assert that this procedure denies them the right to "a fair and impartial trial." Treating the contention as a claim of denial of due process in violation of 25 U.S.C. § 1302(8), the court does not believe that due process forbids a tribe from employing such a procedure and therefore concludes that the plaintiffs state no claim upon which relief can be granted.

### (2) Election Irregularities

■ The plaintiffs do not plead specific facts in support of their claim that the current Seneca Council is illegally constituted because of election irregularities. The complaint refers to "election irregularities and fraud," including the "purchase of votes." In particular, there are no factual allegations, or even a conclusory allegation, that the Seneca Nation, the Seneca Council or members of the Council engaged in election activities which would constitute a violation of due process or equal protection and hence 25 U.S.C. § 1302(8). Even if one construes the affidavits sub-

mitted in support of the plaintiffs' application for a preliminary injunction as part of the complaint, this defect is not cured, as the affidavits do not identify the persons or political parties buying votes. Some courts have doubted that the federal courts have jurisdiction over tribal elections under 25 U.S.C. § 1302, see Groundhog v. Keeler, 442 F.2d 674, 682 (10th Cir. 1971), but certainly no jurisdiction exists unless a claim is supported by well-pleaded facts including facts which show that resort to tribal remedies has failed. Cf. Solomon v. LaRose, 335 F.Supp. 370 (D.Neb.1971). Here the complaint states no claim upon which relief can be granted.

### (3) The Council's Power to Contract

■ The plaintiffs claim that the Seneca Council, acting alone, does not possess the power to enter into a contract, such as the Fisher-Price agreement, which requires an expenditure of tribal money. This bald conclusory allegation does not state a claim of a violation of 25 U.S.C. § 1302(8).

■ Even if one considers the material submitted in support of the application for a preliminary injunction, no claim is stated upon which relief can be granted. Apparently the plaintiffs contend, first, that the Fisher-Price agreement is a "treaty" which, under Section V of the Seneca Constitution, must be subjected "to the approval of at least three-fourths of the legal voters and the consent of three-fourths of the mothers of the Nation" and, second, that the agreement violates the following provision of Section II of the Seneca Constitution:

> It shall not be lawful for the council to make appropriations of public money in any one year exceeding the sum of the aggregate revenue of that year; but the council shall make appropriation of public money to carry on the government in extraordinary cases for the welfare of the nation.

As previously noted, a violation of a provision of the Seneca Constitution is not necessarily a violation of 25 U.S.C. § 1302(8). Due process of law does not require a government to submit a treaty, let alone a contract, to a referendum of the populace, nor does it prohibit the government from annually expending more money than it takes in. Nor is there any indication that failure to adhere to the provisions involves invidious discrimination against the plaintiffs which would constitute a violation of equal protection.

In any event, the plaintiffs do not have standing to challenge the expenditure contemplated by the Seneca Council pursuant to the Fisher-Price contract. In order to have standing, the plaintiffs must have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). As stated in Jenkins v. McKeithen, 395 U.S. 411, 423, 89 S.Ct. 1843, 1850, 23 L.Ed.2d 404 (1969):

. . . something more than an "adversary interest" is necessary to confer standing. There must in addition be some connection between the official action challenged and some legally protected interest of the party challenging that action.

The plaintiffs, however, can allege no such connection. As the material submitted by them in support of their application for a preliminary injunction indicates, the funds to be expended by the Seneca Nation are moneys available to it under Section 4 of the Seneca Rehabilitation Act of 1964, Pub.L.No. 88–533, § 4, 78 Stat. 738. The plaintiffs have no vested interest in these funds, either by statute or otherwise. Section 4 itself provides that none of the funds authorized therein "shall be used for per capita payments." In addition, it is established that a tribe has full authority to use and dispose of tribal property and that no individual Indian has an enforceable right in the property. *See* United States v. Chase, 245 U.S. 89, 92, 38 S.Ct. 24, 62 L.Ed. 168 (1917); McDougal v. McKay, 237 U.S. 372, 383, 35 S.Ct. 605, 59 L.Ed. 1001 (1915); Sizemore v. Brady, 235 U.S. 441, 446–447, 35 S.Ct. 135, 59 L.Ed. 308 (1914); Delaware Indians v. Cherokee Nation, 193 U.S. 127, 136, 24 S.Ct. 342, 48 L.Ed. 646 (1904); Eastern Band of Cherokee Indians v. United States, 117 U.S. 288, 308, 6 S.Ct. 718, 29 L.Ed. 880 (1886); Holt v. Commissioner of Internal Revenue, 364 F.2d 38, 41 (8th Cir. 1966); Taylor v. Tayrien, 51 F.2d 884, 891 (10th Cir.), cert. denied, 284 U.S. 672, 52 S.Ct. 127, 76 L.Ed. 569 (1931); Shulthis v. McDougal, 170 F. 529, 534 (8th Cir. 1909).

Nor is Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), of assistance to the plaintiffs in attempting to establish standing. That case was a taxpayer's suit. The plaintiffs here do not allege that taxes paid by them to the Seneca Nation are being used to implement the Fisher-Price contract. Rather, as indicated by their own papers, the funds come from Section 4 of the Seneca Rehabilitation Act. In these circumstances, the plaintiffs do not have status as taxpayers to challenge the disposition of the funds. *See* Flast v. Cohen, *supra,* at 102; Caldwell v. Craighead, 432 F.2d 213, 220 n. 4 (6th Cir. 1970); Lemon v. Kurtzman, 310 F.Supp. 35, 42 (E.D.Pa.1969), rev'd on other grounds, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

### (4) The Nation's Power of Eminent Domain

Plaintiffs Lillian Kennedy and Mary Kennedy hold use interests in land which would be included in the expanded industrial park. They claim that the Seneca Nation lacks the power of eminent domain. This claim must be rejected.

■ As previously noted, the Seneca Nation possesses all the inherent rights of sovereignty except where restrictions have been placed thereon by the United States. *See* United States v. Kagama, *supra,* at 381, 6 S.Ct. 1109; Worcester v. Georgia, *supra,* at 539, 31 U.S. 515; Iron Crow v. Oglala Sioux Tribe, 231 F.2d 89, 91–94 (8th Cir. 1956); Patterson v. Council of Seneca Nation, 245 N.Y. 433, 443, 157 N.E. 734, (1927). The power of eminent domain "is an incident of sovereignty, and . . . requires no constitutional recognition." United States v. Jones, 109 U.S. 513, 518, 3 S.Ct. 346, 350, 27 L.Ed. 1015 (1883). It is an "offspring of political necessity; and it is inseparable from sovereignty, unless denied it by fundamental law." Kohl v. United States, 91 U.S. 367, 371–72, 23 L.Ed. 449 (1886).

The court has found no federal statute terminating the tribal power of eminent domain. Moreover, enactment of 25 U.S.C. § 1302(5), a violation of which the plaintiffs allege, indicates congressional recognition of the power. As was stated in Kohl v. United States, *supra,* at 372–73, 23 L.Ed. 449, the imposition of a limitation on the power of eminent domain is "an implied assertion" of the existence of the power.

The conclusion that Indian tribes possess the power of eminent domain *is* reinforced by the view taken by the United States Department of the Interior. The Department is given broad authority over the conduct of Indian affairs, *see* 25 U.S.C. § 2, and the views of its officials on the question of the powers of Indian tribes therefore carry weight. *Cf.* Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). The Solicitor of the Department has concluded that an Indian tribe organized under 25 U.S.C. § 476 possesses the power of eminent domain. *See* unpublished opinion of the Solicitor, Dec. 13, 1934, at 19–25. The reasoning of the opinion is applicable to the case of the Seneca Nation, whose constitutional organization antedates the enactment of 25 U.S.C. § 476, and who therefore do not come within the coverage of the section. *See* 25 U.S.C. § 473.

Upon the basis of the foregoing, the court determines that the claim that the Seneca Nation does not possess the power of eminent domain does not state a claim upon which relief can be granted.

### (5) Public Use and Just Compensation

■ Plaintiffs Lillian Kennedy and Mary Kennedy also claim that condemnation of their use interests would be a taking for nonpublic use and without just compensation. It is premature to raise these claims prior to the initiation of any condemnation proceedings. Only after such proceedings are held and their claims are raised and rejected therein may they seek relief in the federal courts. *Cf.* Landowners Consideration Ass'n v. Montana Power Co., 300 F. Supp. 54, 58 (D.Mont.1969); Immobiliaria Borinquen, Inc. v. Garcia Santiago, 295 F.Supp. 203, 204–05 (D.P.R.1969). At present, however, there is stated no claim of a violation of 25 U.S.C. § 1302 (5) upon which relief can be granted.

All of the plaintiffs' claims having been considered, it is hereby ordered that the complaint be dismissed for failure to state a claim upon which relief can be granted against any of the defendants. The Clerk is directed to file forthwith a judgment dismissing the complaint.

So ordered.