Larry PETTENGILL et al., Appellants,

v.

PUTNAM COUNTY R-1 SCHOOL DIS-
TRICT, UNIONVILLE, MIS-
SOURI, et al., Appellees.

No. 72-1532.

United States Court of Appeals,
Eighth District.

Submitted Jan. 12, 1973.

Decided Jan. 18, 1973.

Rehearing Denied Feb. 12, 1973.

Frick & Mayberry, Kirksville, Mo., filed brief for appellants.

Lawrence M. Berkowitz, Kansas City, Mo., filed brief for appellees.

Before MATTHES, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH, District Judge.*

PER CURIAM.

The appellants, property owners and residents of the Putnam County R-1 Reorganized School District of Putnam County, Missouri, brought an action in Federal District Court in their own behalf and on behalf of all those similarly situated to set aside a school bond election held by the appellee-school district on October 19, 1971. Appellants contended that certain election irregularities deprived them of their right to a fundamentally fair election and of their right to have their votes undiluted by illegal votes cast in the election, and that these irregularities subject the property of appellants to a taking without due process of law. The district court dismissed the complaint for want of jurisdiction. This appeal followed. We affirm the action of the district court.

Appellants alleged the following facts in their complaint: That appellee-school

* Eastern District of Michigan, sitting by designation.

board held an election on a proposed $1,-100,000 school bond issue, with the bonds to be retired by the levy of a property tax; that 1,466 votes were cast in favor of the proposition, 726 being cast against; that the proposition was de-clared to have passed by a margin of five votes over the required two-thirds ma-jority; that appellants believed that five electors personally voting and six elec-tors casting absentee ballots were not qualified to vote because they did not satisfy the residency requirements pre-scribed by law; that two electors were not qualified to vote because they were not of lawful age when they applied for absentee ballots; that 116 electors cast absentee ballots which were void since there were irregularities in the applica-tion, delivery or execution of these bal-lots; that on November 5, 1971, appel-lees were informed of these irregularities and were requested to declare that the bond election had failed of passage or to hold a hearing on these irregularities; that these requests were denied.

Appellants attempt to posit the ex-istence of federal jurisdiction on the theory that the board of education of the appellee-school district has diluted appel-lants' legal votes by counting illegally cast votes and that such (state) action amounts to a deprivation of appellants' civil rights. According to appellants, the complaint alleges facts actionable un-der the provisions of 42 U.S.C. § 1983, with federal jurisdiction resting either upon 28 U.S.C. § 1343, the jurisdictional counterpart to § 1983, or upon 28 U.S.C. § 1331, which authorizes federal jurisdic-tion for civil actions of a requisite amount arising under the Constitution, laws, or treaties of the United States.

■ We reject this theory. Appel-lants cite no cases, and we have found none, which authorize a federal court to be the arbiter of disputes over whether particular persons were or were not en-titled to vote or over alleged irregulari-ties in the transmission and handling of absentee voter ballots.

In Powell v. Power, 436 F.2d 84 (2d Cir. 1970), six voters in a congressional primary election sought the intervention of the federal court, alleging that state officials had permitted a number of in-dividuals to cast ballots in the election, which individuals were not qualified to vote under state law. In affirming the district court's denial of relief sought under the Voting Rights Act of 1965 and the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Court said:

In the plaintiffs' view, [these] fed-eral statutes comprehensively protect their ballots against dilution by illegal voting, whether or not the dilution was wilful or knowing. It is appropriate to note at the outset that the plain-tiffs do not claim any discrimination because of race. Thus, they face a con-siderable burden of persuasion in as-serting so sweeping and novel a con-ception, one apparently never before asserted, so far as reported cases re-veal. Were we to embrace plaintiffs' theory, this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tal-lies, and certificates of election for all manner of error and insufficiency un-der state and federal law. [*Id.* at 86.]

■ We here adopt and apply this ra-tionale. In essence, the appellants' com-plaint asks the federal court to oversee the administrative details of a local elec-tion. We find no constitutional basis for doing so in the absence of aggravating factors such as denying the right of citi-zens to vote for reasons of race, *see* Unit-ed States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960), or fraudulent interference with a free election by stuff-ing of the ballot box, *see* United States v. Saylor, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341 (1944), or other unlawful con-duct which interferes with the individ-ual's right to vote, *see* 42 U.S.C. § 1985. No similar circumstance is alleged in the complaint in this case.

■ Appellants complain that the state courts of Missouri will not afford them a forum for their complaint. *See* Nichols v. Reorganized School District

No. 1 of Laclede County, 364 S.W.2d 9 (Mo.1963). The lack of a state remedy to appellants does not alone operate to give federal jurisdiction over their cause. Missouri law does permit challenges to absentee ballots, which challenges may be presented to election officials for review. Mo.Rev.Stat. § 112.080 (Supp. 1972), V.A.M.S.

Accordingly, we find no basis for federal intervention in this local election dispute and we affirm the judgment of dismissal by the district court.