Russell **MEANS** et al.

v.

Dick **WILSON** et al.

No. CIV 74–5010.

United States District Court,

D. South Dakota.

Sept. 20, 1974.

Stephen L. Pevar, Mission, S. D., Steven Trecker, Sioux Falls, S. D., for plaintiffs.

Dennis H. Hill, Rapid City, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

Twenty-eight plaintiffs, American Indians and residents of the Pine Ridge Indian Reservation, brought this action to set aside the Oglala Sioux Tribal election held on February 7, 1974. The plaintiffs claim that certain alleged election irregularities deprived them of their right to a fundamentally fair election.

The plaintiffs further claim that various fraudulent and criminal acts alleged to have been committed by the defendants during the election period violated their right to vote. The plaintiffs' claims, therefore, can be divided into two categories: (1) alleged administrative election irregularities, and (2) alleged fraudulent conduct in supervising the election.

The plaintiffs urge their cause of action under 18 U.S.C.A. §§ 241, 245; 42 U.S.C.A. §§ 1985(3), 1986, 1988; and under 25 U.S.C.A. §§ 1301, 1302, 1303, the Indian Civil Rights Act of 1968.

The United States Department of the Interior, the Bureau of Indian Affairs, the Commissioner of Indian Affairs, the Department of Justice, and the Judges of the Oglala Sioux Tribal Government were named in the original complaint as defendants but were dismissed by the plaintiffs on March 29, 1974, and now are not parties to this litigation. The remaining defendants in this case are all American Indians and residents of the Pine Ridge Indian Reservation. Twenty of the defendants are named parties both as individuals, and in their official capacity as officers and employees of the Oglala Sioux Tribe, and other defendants are named parties solely as individuals.

The plaintiffs request injunctive relief to prevent the tampering with or the destruction of official election ballots, voter registration lists, and affidavits of residency used during the February 7th election. The plaintiffs request injunctive relief to prevent candidates certified by the Election Board as elected in the February 7th election from being inaugurated into office, and they also request injunctive relief to prevent the defendants, who would continue to hold office if newly-elected officials were prevented from taking office, from exercising all governmental authority except authority to perform ministerial functions necessary for day to day management of tribal affairs. The plaintiffs further request that this Court declare the February 7th election to be null and void and order the Tribal Council to

conduct a new election. In addition to the relief prayed for above, the plaintiffs request an award of $15,000.00 in actual and punitive damages to compensate for alleged violations of their civil rights.

Upon motion, order to show cause, and hearing this Court granted a Temporary Restraining Order on February 11, 1974, to prevent the tampering with or the destruction of the February 7th election documents. On February 13, 1974, this Court ordered the United States Marshal's Service to take protective custody of the election documents. A hearing was held on April 4, 1974, upon the plaintiffs' motion to enjoin the installation of officers and officials elected at the February 7th election, and good cause having been shown, this Court denied the motion and allowed the newly-elected officials to continue to function as the new Oglala Sioux Tribal Government. The plaintiffs were allowed to amend their complaint twice, the defendants answered the complaint on May 11, 1974, and a pretrial was held on July 8, 1974. Pursuant to stipulation between all parties to this case, that the documentary evidence be presented to the Court in a bifurcated trial, the trial commenced on July 15, 1974.

On May 11, 1974, the defendants moved this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint for failure to state a claim upon which relief can be granted. This motion is now before the Court for consideration. In considering this motion, matters that have been presented outside the pleadings are excluded by the Court. Fed.R. Civ.P. 12(b).

In accordance with Rule 12(h)(3) of the Federal Rules of Civil Procedure, that "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action," this Court of its own motion and upon defendants' urging that this case does not come within the applicable grant of statutory authority, recessed the trial on July 17, 1974, and moved to dismiss for lack of subject matter jurisdiction. A briefing schedule was set on both pending motions, and on September 3rd, the final reply brief was submitted to the Court.

In considering the motion to dismiss for lack of subject matter jurisdiction we must keep in mind the important principle that federal courts are courts of limited jurisdiction. The federal courts are empowered to hear only such cases as are within the judicial power of the United States, as defined by the United States Constitution, and only those cases that have been entrusted to them by a jurisdictional grant by Congress. The rule is well settled that the party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the competence of the Court and the presumption is that the Court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists, Wright and Miller, Federal Practice and Procedure, section 1206; Turner v. President, Directors and Company of the Bank of North America, 4 Dall. 8, 1 L.Ed. 718 (1799); Rock Island Millwork Co. v. Hedges Gough Lumber Co., 337 F.2d 24 (8th Cir. 1964). To rebut this presumption against jurisdiction, the facts that disclose the existence of jurisdiction must be affirmatively alleged. Smith v. McCullough, 270 U.S. 456, 46 S.Ct. 338, 70 L.Ed. 682 (1926); Bowman v. White, 388 F.2d 756 (4th Cir. 1968); Joyce v. United States, 474 F.2d 215 (3rd Cir. 1973). Ordinarily the allegations of jurisdiction in the pleadings are enough, but when jurisdiction is challenged, the burden is on the plaintiff to establish its existence. Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co., 469 F.2d 416 (5th Cir. 1972). When the question of jurisdiction depends upon the same facts that are involved in the disposition of the merits, the Court will retain the case and determine the issue, as it always has jurisdiction to determine its jurisdiction. Nestor v. Hershey, 138 U.S.App.D.C. 73, 425 F.2d 504 (1970).

■ The defendants challenged jurisdiction at the preliminary injunction hearing on April 4, 1974, and again on May 11, 1974. In considering the question whether this Court has jurisdiction of the action, it is important to realize that Indian tribes enjoy a quasi-sovereign immunity which exempts them from suit without the consent of Congress. United States v. United States F. & G. Co., 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894 (1940); Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe, 370 F.2d 529, 532 (8th Cir. 1967). The immunity may not be evaded by suing tribal officers. Adams v. Murphy, 165 F. 304 (8th Cir. 1908); Haile v. Saunoke, 246 F.2d 293 (4th Cir. 1957).

■ The facts alleged and the plaintiffs' claims under 18 U.S.C.A. §§ 241 and 245, and 42 U.S.C.A. §§ 1985, 1986, 1988 do not provide this Court with a proper jurisdictional base. The plaintiffs allege violations of their civil rights but do not claim any discrimination because of race. This is a civil suit. It is also clear that plaintiffs' claim is concerned only with civil rights of Indians in their relationships with the Indian tribe, officers of the tribe, and with other individual Indians. It is not concerned with Indians in their relationship to whites or to the state or federal governments.

The plaintiffs' claims under 18 U.S.C.A. §§ 241 and 245 border on the frivolous and are completely without merit. This section provides criminal sanctions for violations of civil rights laws. 18 U.S.C.A. §§ 241 and 245 create no civil liability. Colliflower v. Garland, 342 F.2d 369 (9th Cir. 1965); Spotted Eagle v. Blackfeet Tribe of the Blackfeet Indian Reservation, 301 F.Supp. 85 (D.C. 1969).

The plaintiffs' claims under 42 U.S.C.A. §§ 1985, 1986 and 1988 are also without merit and fail to provide this Court with a proper jurisdictional base. In Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Reservation, 301 F. Supp. 85 (1969), the Court after careful review of the legislative history, held that 42 U.S.C.A. § 1985 does not provide any rights to the Indian in his relationship with his tribal government. Citing Elk v. Wilkins, 112 U.S. 94, 5 S.Ct. 41, 28 L.Ed. 643 (1884), and Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951), the Court concluded that § 1985 was a post Civil War measure concerned with the rights of recently liberated Negroes, and the statute when given the circa 1870 meaning, excludes Indians. Another case that dealt with the rights of an Indian against his tribe under 42 U.S.C.A. § 1981 et seq. is Seneca Constitutional Rights Organization v. George, 348 F.Supp. 48 (D.C. 1972), which held that:

> The court has been directed to nothing, and has found nothing, in the language of 42 U.S.C. §§ 1981 to 1987 or in the cases thereunder which indicates that by enacting the provisions Congress intended to strip Indian tribes of their quasi-sovereign immunity and to consent to suits against the tribes. It therefore holds that Indian tribes are immune to suits alleging violations of these sections. *Id.* at 50.

It is clear from the legislative history and from the case law that the plaintiffs have no cause of action against the Oglala Sioux Tribe, its agencies or officers under 42 U.S.C.A. §§ 1985, 1986, 1988, and the Court lacks a proper jurisdictional basis to proceed under these claims. Post v. Payton, 323 F.Supp. 799 (E.D.N.Y.1971).

The result is the same when we consider the claim under 42 U.S.C.A. §§ 1985, 1986, 1988 against the defendants named as individuals. Although neither *Spotted Eagle, supra,* nor *Seneca, supra,* dealt specifically with this question, a helpful analogy can be drawn between suits against the tribe and suits against individuals. If 42 U.S.C.A. §§ 1985, 1986, 1988 provide no rights in the first instance because of their Civil War history and purpose, then it follows that the same reasons would render these sections inapplicable in the second instance. We therefore hold that 42 U.S.

C.A. §§ 1985, 1986, 1988 provide no cause of action to the plaintiffs as against the Indian defendants named as individuals, and that this Court lacks jurisdiction to proceed under those claims.

We conclude that plaintiffs' only claim in this case that could possibly come within the jurisdiction of this Court is the claim under 28 U.S.C.A. § 1343(4) and 25 U.S.C.A. § 1302(1), (8). Immunity from suit would bar jurisdiction in this case unless the Indian Civil Rights Act applies. Cherokee Nation v. State of Oklahoma, 461 F.2d 674, 681 (10th Cir. 1972); Iron Crow v. Oglala Sioux Tribe, 231 F.2d 89, 94 (8th Cir. 1956); Luxon v. Rosebud Sioux Tribe, 455 F.2d 698, 699 (8th Cir. 1972).

The plaintiffs in this case have alleged that jurisdiction over the subject matter of the complaint rests in 28 U.S.C.A. § 1343(4) which states:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

The plaintiffs have claimed violations of 25 U.S.C.A. § 1302(1) and (8) which provide that:

No Indian tribe in exercising powers of self-government shall—

(1) make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances;

(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.

The plaintiffs claim that administrative election irregularities and fraud allegedly committed by defendants have violated their protected rights under § 1302(1), (8) and they rely on McCurdy v. Steele, 353 F.Supp. 629 (D.C.1973) for jurisdictional support and urge that case as controlling here. *McCurdy* is inapplicable here and is not controlling because that case involved parties other than Indians including the Bureau of Indian Affairs, and because the disputed conduct occurred in Nevada and not on an Indian reservation. McCurdy v. Steele, 353 F.Supp. 629, 638 n. 15 (1973). This Court did, however, take guidance from Luxon v. Rosebud Sioux Tribe of South Dakota, 455 F.2d 698 (8th Cir. 1972), and Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), cited therein, and ruled on April 4, 1974, that jurisdiction existed at least temporarily to prevent irreparable injury and to determine jurisdiction. In *Luxon,* the Eighth Circuit Court of Appeals stated:

In our opinion, 28 U.S.C. § 1343(4) gives the district court jurisdiction to determine, *in a proper case,* whether an Indian tribe has denied to one of its members any of the rights given to the members under the Indian Bill of Rights. (Emphasis added.)

The difficulty here is in determining whether or not the plaintiffs have brought before this Court a "proper case."

The federal courts, in order to avoid unduly disrupting tribal government, have traditionally avoided involvement in intratribal controversies. This policy of federal judicial restraint is consistent with the present federal objective of preserving the Indian tribes as self-governing, culturally autonomous units. Kills Crow v. United States, 451 F.2d 323, 326–327 (8th Cir. 1971); note, The Indian Bill of Rights and the Constitutional Status of Tribal Governments, 82 Harv.L.Rev. 1343, 1359–60 and hearings cited (1969). The Indian Civil Rights Act appears to have been drafted by Congress to enhance the civil liberties of individual Indians without unduly undermining Indian self-government and cultural autonomy. Its guarantees of individual rights should not operate

to unduly disrupt tribal culture and should be harmonized with governmental autonomy. The purpose of the Act and the principle of federal judicial restraint dictate that an action involving an internal controversy among Indians over tribal government is a subject not within the jurisdiction of a federal court and not a "proper case" under *Luxon, supra.* Cornelius v. Moxon, 301 F.Supp. 783 (D.C.1969); Motah v. United States, 402 F.2d 1 (10th Cir. 1968); Green v. Wilson, 331 F.2d 769 (9th Cir. 1964). As a prerequisite to federal jurisdiction and involvement in intratribal government, the plaintiff must clearly show that the subject matter involved amounts to a "proper case" under 25 U.S.C.A. § 1302.

■ We can quickly dispose of one part of the plaintiffs' claim under 25 U.S.C.A. § 1302 since it is clear from the language of the Act, its legislative history, and the case law that the Indian Civil Rights Act cannot be held to authorize civil actions for violations of the acts prescribed therein by individuals. We agree with the Court in Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Reservation, 301 F.Supp. 85 (1969), that:

> The Indian Civil Rights Act does not create rights as against individuals, and that, hence, within the meaning of 28 U.S.C.A. § 1343(4) there is no action authorized by law to be commenced against individuals. *Id.* at 90.

We therefore hold that 28 U.S.C.A. § 1343(4) and 25 U.S.C.A. § 1302 provide no cause of action to the plaintiffs as against the Indian defendants named as individuals or as against the officers of the tribe as individuals and therefore this Court lacks jurisdiction to proceed on those claims.

■ The only claims remaining for our consideration then are plaintiffs' claims against the tribal agencies and the tribal officers under the Indian Civil Rights Act of 1968. This Court finds that it lacks jurisdiction to proceed on these claims because the available tribal remedies have not been exhausted.

The plaintiffs acknowledge in their complaint the existence of tribal remedies. They allege that two election contests were filed before the Election Board, and were denied by the Election Board. They further acknowledge that no action has been obtained from the Tribal Council as is provided for in election ordinance 85g, and that no action has been filed in Tribal Court. The plaintiffs seem to take the position that failure of the Tribal Council to rule on the election contests is sufficient evidence of exhaustion. It could also be argued that plaintiffs' activities in investigating the election and initiating this action in federal court have had a disrupting effect on tribal processes designed to evaluate election disputes. The Tribe has clearly provided a reasonable process for election complaints, and the fact that the Tribal Council has not yet rendered a decision on the complex and numerous claims does not lead reasonably to the conclusion that resort to the Council is futile. We agree with the Eighth Circuit Court of Appeals' decision in O'Neal v. Cheyenne River Sioux Tribe, 482 F.2d 1140 (8th Cir. 1973). The Court stated at page 1141 that the principal issue before them was "whether individual Indian plaintiffs, who fail to exhaust tribal remedies in civil disputes with the tribe, are prohibited from bringing suit in federal court on an action predicated essentially upon the Indian Bill of Rights." The Court answered that individual Indian plaintiffs must, with few exceptions, exhaust their tribal remedies. At page 1143, the Court established three questions to be answered so as to determine if dismissal is proper: (1) "What, if any, tribal remedies existed? (2) Should an exhaustion requirement generally be applied in cases such as this? (3) If exhaustion is generally required, is it appropriate to require exhaustion in this case?" The Court determined that two tribal remedies did exist which had not been utilized, and in a learned discussion they found that an exhaustion requirement should generally be applied and cited White Eagle v. One Feather, 478

F.2d 1311 (8th Cir. 1973); Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed. 2d 251 (1959); Luxon v. Rosebud Sioux Tribe of South Dakota, 455 F.2d 698 (8th Cir. 1972); Dodge v. Nakai, 298 F.Supp. 17 (D.C.1968); and McCurdy v. Steele, 353 F.Supp. 629 (D.C.1973). The Court stated:

> It is clear to us that Congress wished to protect and preserve individual rights of the Indian peoples, with the realization that this goal is best achieved by maintaining the unique Indian culture and necessarily strengthening tribal governments. *Id.* 482 F.2d at 1144.

The Court did recognize and discuss certain exceptions to the exhaustion requirement. In *Dodge, supra,* exhaustion was not necessary due to the presence of some defendants not subject to tribal court jurisdiction, and in *McCurdy, supra,* the only tribal forum was the tribal council being challenged by the plaintiffs. In McCurdy, however, the tribal council had specifically refused to deal with the plaintiffs at all. The present case falls within neither exception. All plaintiffs are subject to tribal jurisdiction, and although the present Tribal Council had a direct interest in the legality of the February 7, 1974 election, there is no reason to assume without proof to the contrary, that self interest would determine their decision. If the decision is adverse to the plaintiffs, they have the further remedy of Tribal Court. This Court does not believe that the judicial system of the Oglala Sioux Tribe, in intratribal controversies, has been demonstrated to be lacking in integrity.

The *O'Neal* court stated, as a general test for application of the exhaustion requirement, that the need to preserve the cultural identity of the tribe by strengthening the tribal courts must be weighed with the need to *immediately* adjudicate alleged deprivations of individual rights. On April 5, 1974, after full hearing and upon good cause having been shown, that the plaintiffs were in no danger of suffering immediate irreparable depriva-

tion of their individual rights, the *O'Neal* Court stated:

> In sum, we can find no persuasive reasons for not requiring exhaustion in this case. A general exhaustion requirement in cases such as this will do much to strengthen tribal governments, including tribal courts, and, thereby aid the reservation Indian in maintaining a distinct cultural identity. Id. 482 F.2d at 1148.

This Court finds that it is appropriate to require exhaustion in this case. It is the function and the affirmative obligation of the tribe in view of their unique ethnic and cultural identity to exercise original jurisdiction in intratribal controversies. This Court finds that because the plaintiffs have failed to exhaust available tribal remedies, this is not a "proper case" under 28 U.S.C.A. § 1343(4) and 25 U.S.C.A. § 1302 and under Luxon v. Rosebud Sioux Tribe of South Dakota, 455 F.2d 698 (8th Cir. 1972), O'Neal v. Cheyenne River Sioux Tribe, 482 F.2d 1140, 1145–1148 (8th Cir. 1973), and this Court therefore lacks jurisdiction to proceed.

Although the finding that plaintiffs have failed to exhaust their administrative remedies would in and of itself dispose of plaintiffs' claims against the tribe and its officers under 25 U.S.C.A. § 1302, this Court prefers to dismiss the complaint on defendants' motion to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ. P. 12(b)(6).

It is clear that plaintiffs' claims under 28 U.S.C.A. § 1343(4) and 25 U.S. C.A. § 1302(1), (8) are insufficient in that they fail to state a claim upon which relief can be granted and the defendants' motion is hereby granted. The amended complaint, together with the affidavits filed in support thereof and made a part thereto, fail to disclose any violation of 25 U.S.C.A. § 1302(1), (8). The jurisdiction of this Court under § 1302 is limited to enforcing the provisions contained therein. It does not extend to insuring compliance with provisions of

Oglala law, unless failure to comply constitutes a violation of the guarantees contained therein. In order to state a claim upon which relief can be granted the plaintiff must clearly allege facts that show a violation of the rights embodied in § 1302(1), (8). This the plaintiffs failed to do.

 This Court agrees with and adopts the rule laid down by the Eighth Circuit Court of Appeals that irregularities in the administration of local elections do not provide a constitutional basis for a federal court to set aside an election "in the absence of aggravating factors such as denying the right of citizens to vote for reasons of race," or "fraudulent interference with a free election by stuffing of the ballot box," or "other unlawful conduct which interferes with the individual's right to vote." Pettengill v. Putnam County, 472 F.2d 121, 122 (8th Cir. 1973).

The Court of Appeals in *Pettengill* indicated the kinds of electoral misconduct which it considered sufficient to justify invalidating an election on constitutional grounds by citing United States v. Saylor, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341 (1944), and 42 U.S.C.A. § 1985.

*Saylor* was a criminal case involving the prosecution of election officers under federal criminal statute for forging ballots in favor of a particular candidate "so as to create a false and fictitious return." 322 U.S. at 386, 64 S.Ct. at 1102. *See*, 18 U.S.C.A. § 241. This is one of a series of cases in which the courts have held that stuffing ballot boxes or falsifying returns is a federal crime under the various statutes which protect civil rights against willful interference. For example, in United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), the defendants were charged with willfully altering and falsely counting and certifying ballots. The Court held that the right to vote is a right secured by the Constitution and, consequently, the intentional deprivation of that right by falsifying and falsely counting and certifying ballots is a fed-

eral crime. *See*, 18 U.S.C.A. §§ 241 and 242. Similarly, in United States v. Mosley, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355 (1913), a conspiracy by election officers to falsify returns by willfully disregarding the returns of certain precincts was held to be a federal crime. The Court held that " . . . the right to have one's vote counted is as open to protection by Congress as the right to put a ballot in a box." 238 U.S. at 386, 35 S.Ct. at 905.

Thus, the Court of Appeals recognized in *Pettengill* that an election may be set aside where there has been electoral misconduct amounting to a crime under the federal criminal laws which protect citizens against interference with constitutional or civil rights. The election cases which have arisen under these laws involved an element of willful and deliberate interference by named defendants with the right to vote, rather than administrative procedural irregularities. *Classic, Saylor* and *Mosley* all involved a showing of willful criminal activity.

The second category of circumstances justifying the invalidation of an election according to the *Pettengill* decision is that in which 42 U.S.C.A. § 1985 would apply. As discussed earlier, this statute does not apply to Indians, but the statute serves here to give some additional insight and meaning into the *Pettengill* rule. 42 U.S.C.A. § 1985 authorizes a civil action for damages in case of injury or deprivation due to unlawful interference with certain federally protected rights. When, for example, there was a specific factual allegation that the named defendant " . . . came to appellant's house during the night of October 17, 1973, called him out and intimidated, threatened and coerced appellant against becoming a registered voter . . . assailed appellant in the nighttime and threatened to destroy or annihilate appellant, his possessions and his family . . . " a federal court had jurisdiction of the civil rights damage action under 42 U.S.C.A. § 1985. Similarly, in Cameron v. Brock, 473 F.2d 608 (6th Cir. 1973), the named defendant

sheriff destroyed the campaign literature of his opponent and arrested the distributor of the literature, a clear violation of rights protected by the First Amendment of the United States Constitution. Damages were awarded to the plaintiff, and the Court of Appeals affirmed:

> We hold that § 1985(3)'s protection reaches clearly defined classes. If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3).

■ Thus the *Pettengill* rule may be summarized as follows: Equal protection and due process provide a jurisdictional basis for a federal court to set aside a local election which is infected with specifically alleged conduct in violation of federal criminal laws or which constitutes such unlawful deprivation of civil rights as to result in a civil liability under 42 U.S.C.A. § 1985. *Pettengill* holds that the federal courts should not become involved in overseeing "the administrative details of a local election . . . in the absence of aggravating factors such as denying the right of citizens to vote for reasons of race, . . . or fraudulent interference with a free election by stuffing of the ballot box, . . . or other unlawful conduct which interferes with the individual's right to vote per 42 U.S.C. § 1985." 472 F.2d at 122. This Court should not set aside a tribal election under the Indian Civil Rights Act in circumstances in which a non-Indian local election under the Fourteenth Amendment would not be set aside.

■ In Pettengill v. Putnam County, 472 F.2d 121 (1973), of the 2,192 votes cast 1,466 votes were cast for and 726 votes were cast against the proposition and the proposition was declared to have passed by a margin of five votes over the required two-thirds majority. The plaintiffs claimed that five electors personally voting and six electors casting absentee ballots were not qualified to vote because they did not satisfy the residency requirements prescribed by law. The plaintiffs further claimed that two electors were not qualified to vote because they were not of lawful age when they applied for absentee ballots, that 116 electors cast absentee ballots which were void since there were irregularities in the application, delivery or execution of these ballots. The defendants were informed of these irregularities and were requested to hold a hearing on these 129 irregularities. The defendants declined to grant a hearing and denied the requests. The district court dismissed the complaint for want of jurisdiction and the Eighth Circuit Court of Appeals affirmed.

The plaintiffs in *Pettengill* attempted to posit the existence of federal jurisdiction on the theory that the defendants diluted their legal votes by counting illegally cast votes and that such state action amounted to a deprivation of their civil rights. The Eighth Circuit Court of Appeals rejected their theory stating:

> Appellants cite no cases, and we have found none, which authorize a federal court to be the arbiter of disputes over whether particular persons were or were not entitled to vote or over alleged irregularities in the transmission and handling of absentee voter ballots. 472 F.2d at 122.

The *Pettengill* court cited Powell v. Power, 436 F.2d 84 (2nd Cir. 1970), wherein six voters in a congressional primary election sought the intervention of the federal court, alleging that state officials had permitted a number of individuals to cast ballots in the election, which individuals were not qualified to vote under state law. In affirming the district court's denial of relief sought under the Voting Rights Act of 1965 and the Civil Rights Act of 1871, 42 U.S.C.A. § 1983, the Court said:

> In the plaintiffs' view, [these] federal statutes comprehensively protect their ballots against dilution by illegal voting, whether or not the dilution was willful or knowing. It is appropriate

to note at the outset that the plaintiffs do not claim any discrimination because of race. Thus, they face a considerable burden of persuasion in asserting so sweeping and novel a conception, one apparently never before asserted, so far as reported cases reveal. Were we to embrace plaintiffs' theory, this court would henceforth be thrust into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law. *Id.* at 86.

The Eighth Circuit Court of Appeals in *Pettengill* adopted and applied the *Powell* rationale and stated:

In essence, the appellants' complaint asks the federal court to oversee the administrative details of a local election. We find no constitutional basis for doing so in the absence of aggravating factors such as denying the right of citizens to vote for reasons of race, . . . or fraudulent interference with a free election by stuffing of the ballot box, . . . or other unlawful conduct which interferes with the individual's right to vote per 42 U.S.C. § 1985. *Id.* 472 F.2d at 122.

We agree with the Eighth Circuit Court of Appeals and adopt their position in *Pettengill* to plaintiffs' claims here. The first claim of the Amended Complaint sets out plaintiffs' belief that in certain polling places, persons were allowed to vote who were not entitled to vote, and alleges irregularities in the transmission and handling of absentee voter ballots. These claims do not violate 25 U.S.C.A. § 1302(1). The claim does not violate the free exercise of religion, or freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances. Similarly, the claim does not violate 25 U.S.C.A. § 1302 (8) in that it does not offend the usual meaning of due process of law or of equal protection of the law. Seneca Con-

stitutional Rights Organization v. George, 348 F.Supp. 51 (D.C.1972); White Eagle v. One Feather, 478 F.2d 1311 (8th Cir. 1973).

In view of the principles of Indian self government and tribal autonomy in intratribal matters, a clear violation of one of the protected rights under 25 U.S.C.A. § 1302 must be shown to state a proper claim. In plaintiffs' first claim they have simply alleged irregularities in election administration. This Court does not require that Indian tribes achieve a freedom from error in the administration of elections which the states need not adhere to under *Pettengill* and *Powell.* As the Court stated in Powell v. Power, 436 F.2d 84, 88 (2nd Cir. 1970):

. . . we cannot believe that the framers of our Constitution were so hypersensitive to ordinary human frailties as to lay down an unrealistic requirement that elections be free of any error. *Id.* at 88.

Plaintiffs' second claim of their twice amended complaint sets forth their belief that threats were made and action taken against those who did not support candidate Wilson. This claim is vague and patently insufficient because it is not supported by allegations of specific facts showing a purposeful deprivation of protected rights under 25 U.S.C. § 1302(1), (8) by defendant tribe or by defendant tribal officers acting within the scope of their official office. To state a proper claim under 25 U.S.C.A. § 1302 the assaults or threats or whatever else claimed, must be tied directly to the tribe or its officers acting within the scope of their official tribal office. The nexus here is not only unclear, it is nonexistent. While the plaintiffs make conclusory statements as to someone's intent to discriminate against them, they do not make any factual allegations indicating "a purposeful discrimination between persons or classes of persons." Snowden v. Hughes, 321 U.S. 1, 10, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944). This Court follows the rule that civil rights complaints which

contain only broad conclusory allegations of violations which are not supported by specific allegations of fact showing an intentional and purposeful deprivation of rights by the defendants, including direct participation of the defendant official in the alleged deprivation, must be dismissed for failure to state a claim. Eisman v. Pan American World Airlines, 336 F.Supp. 543 (E.D. Pa.1971); Wallach v. City of Pagedale, 359 F.2d 57 (8th Cir. 1966); Mahurin v. Moss, 313 F.Supp. 1263 (E.D.Mo. 1970); Brooks v. Peters, 322 F.Supp. 1273 (E.D.Wis.1971); Robinson v. Mc-Corkle, 462 F.2d 111 (3rd Cir. 1972); Jennings v. Davis, 339 F.Supp. 919 (W.D. Mo.1972); Sanberg v. Daley, 306 F Supp. 277 (N.D.Ill.1969).

Plaintiffs' third claim and fourth claim are insufficient in that they are not supported by allegations of specific facts showing a purposeful deprivation of protected rights by the defendant tribe or defendant tribal officials acting within the scope of their authority. Seneca Constitutional Rights Organization v. George, 348 F.Supp. 51 (D.C. 1972). As noted earlier, the United States Government, the Department of Interior, and the Bureau of Indian Affairs are not parties to this litigation. Allegations directed at these nonparties do not state a claim against the tribe or its officers under 25 U.S.C.A. § 1302. The "tribal police force" is described in the plaintiffs' fourth claim as an "auxiliary private police force." Other allegations are made against "agents of the federal government" and "private individuals." This Court concludes that allegations directed against nonparties, individuals, a private police force, and unidentified person not linked in any way to the tribe or its officers, do not constitute allegations of unlawful conduct under § 1302 by the defendant tribe or its officers acting within the scope of their offfice.

Some courts have doubted that the federal courts have jurisdiction over tribal elections under 25 U.S.C.A. § 1302, see, Groundhog v. Keeler, 442 F.2d 674, 682 (10th Cir. 1971), but certainly no jurisdiction exists unless a claim is complete and supported by well-pleaded facts including facts which show that a good faith resort to available tribal remedies has failed. Solomon v. LaRose, 335 F.Supp. 715 (D.Neb.1971). Here the complaint states no claim upon which relief can be granted.

Upon careful consideration and for all the above reasons, the defendants' motion to dismiss is hereby granted and plaintiffs' complaint under 25 U.S.C. § 1302(1), (8) against the Oglala Sioux Tribe and its officers is dismissed for failure to state a claim upon which relief can be granted.