**Dorothy CLARK et al.**

**v.**

**The LAND AND FORESTRY COMMIT-TEE OF the CHEYENNE RIVER SIOUX TRIBAL COUNCIL et al.**

**Civ. No. 74–3021.**

United States District Court,
D. South Dakota.

Aug. 9, 1974.

David L. Bergren, Fort Pierre, S.D., for plaintiff.

Donald J. Coleman, Dupree, S.D., for Tribal Council.

Michael Carter and H. Richard Churchwell, Legal Services Committee, Eagle Butte, S.D., for defendant Eldred Fast Horse.

## MEMORANDUM OPINION

BOGUE, District Judge.

The above matter has come before this Court pursuant to defendants' motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for an order dissolving the temporary restraining order and remanding the case to the Land and Forestry Committee of the Cheyenne River Sioux Tribal Council. A hearing was held on this matter to the Court in Rapid City, South Dakota on August 1, 1974.

The facts of this case are, with minor exceptions, not in dispute. On December 7, 1973, the Cheyenne River Sioux Tribal Council (hereinafter Tribal Council) awarded a grazing permit to the plaintiff. The permit included the land designated as Sections 23 and 24, Township 11 N., Range 28E, Dewey County. This land is owned by the Cheyenne River Sioux Tribe and is within the exterior boundaries of the Cheyenne River Indian Reservation. Sometime later in December, the Land and Forestry Committee of the Cheyenne River Sioux Tribal Council (hereinafter Committee) recommended to the Tribal Council that defendant Fast Horse's application for a grazing permit for these same sections

be approved. During early January, 1974, the Tribal Council approved a list of applications for grazing permits which included the application of defendant Fast Horse. On June 11, 1974, the Tribal Council affirmed this approval and rescinded their award of a permit to the plaintiff. On or about June 3, 1974, the plaintiff appeared before the Committee to inquire as to the status of the two sections of land, but received no satisfactory answers. In late June, 1974, the plaintiff went before the Tribal Council to ask for an explanation of the Council's action, but was referred back to the Committee. On July 17, 1974, a complaint which the plaintiff had filed in Tribal Court against the tribe was dismissed with prejudice for lack of jurisdiction.

■ This matter presents several interesting questions of law and procedure to the Court. Because of the reestablishment of the Indian reservations within South Dakota to their original boundaries as set by treaty in the latter half of the nineteenth century, this case is also of great importance in regard to future civil litigation arising on the reservations. More specifically, we must determine whether the federal district courts will be courts of original jurisdiction for civil claims arising on the reservations or, whether we will recognize, encourage, and support the vitality and sovereignty of Indian judicial and administrative processes. For reasons to be set out below, we adopt the latter approach.

Our discussion of the question before us is best begun by a detailed examination of the controlling Eighth Circuit Court of Appeals opinion. This case is O'Neal v. Cheyenne River Sioux Tribe, 482 F.2d 1140 (8th Cir. 1973). In O'Neal, the plaintiffs were enrolled Indians grazing cattle on tribal land under leases called grazing permits. The plaintiffs borrowed money from the federal government, a local bank, and the tribe to purchase cattle for grazing on the leased land. The plaintiffs alleged that they were encouraged by some trib-

al officials to pay the government first and let the tribal loan go. The tribe then foreclosed their loan and repossessed plaintiffs' cattle. The complaint alleged that some of the defendants had wrongfully taken the cattle and wrongfully threatened eviction from the grazing unit. *O'Neal,* p. 1142. The Court stated at page 1141 that the principal issue before them was "whether individual Indian plaintiffs, who fail to exhaust tribal remedies in civil disputes with the tribe, are prohibited from bringing suit in federal court on an action predicated essentially upon the Indian Bill of Rights." The Court answered that individual Indian plaintiffs must, with few exceptions, exhaust their tribal remedies, and affirmed the district court's dismissal of the action with a modification.

■ At page 1143, the Court established three questions to be answered so as to determine if dismissal is proper in cases of this kind. "(1) What, if any, tribal remedies existed? (2) Should an exhaustion requirement generally be applied in cases such as this? (3) If exhaustion is generally required, is it appropriate to require exhaustion in this case?" The Court quickly determined that two tribal remedies did exist which had not been utilized. Also, in an excellent and learned discussion, they found that an exhaustion requirement should generally be applied. Citing White Eagle v. One Feather, 478 F.2d 1311 (8th Cir. 1973); Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); Luxon v. Rosebud Sioux Tribe of South Dakota, 455 F.2d 698 (8th Cir. 1972); Dodge v. Nakai, 298 F.Supp. 17 (D.C. 1968); McCurdy v. Steele, 353 F.Supp. 629 (D.C.1973). At page 1144 of 482 F.2d, the Court stated, "it is clear to us that Congress wished to protect and preserve individual rights of the Indian peoples, with the realization that this goal is best achieved by maintaining the unique Indian culture and necessarily strengthening tribal governments." The Court did recognize some exceptions to the exhaustion requirement and dis-

cussed two of them. In *Dodge, supra,* exhaustion was not necessary due to the presence of some defendants not amenable to tribal court jurisdiction; in *McCurdy, supra,* the only tribal forum was the tribal council being challenged by the plaintiffs. However, in that case, the council had specifically refused to deal with the plaintiffs at all. The *O'Neal* court stated, as a general test for the application of the exhaustion requirement, that the need to preserve the cultural identity of the tribe by strengthening the tribal courts must be weighed with the need to immediately adjudicate alleged deprivations of individual rights. The Eighth Circuit, in *O'Neal,* held that the exhaustion requirement was appropriate in the case before them. They stated: "it would not be an undue burden to require the plaintiffs to seek consent from the tribe in the event the plaintiffs are required to maintain a separate action in the Superior Court of the CRST." *O'Neal,* p. 1146. They also declared, "We do not believe that the judicial system of the CRST has been demonstrated to be lacking in integrity." *O'Neal,* p. 1147. In closing, on page 1148, the Court held:

"In sum, we can find no persuasive reason for not requiring exhaustion in this case. A general exhaustion requirement in cases such as this will do much to strengthen tribal courts, and, thereby aid the reservation Indian in maintaining a distinct cultural identity. However, each case will require a balancing of the merits of exhaustion against the harm an exhaustion requirement might threaten with regard to those who claim their constitutional rights have been violated."

The Court affirmed the district court's dismissal but stated that if the tribal court did not reach the merits of the controversy, then the district court would proceed with the trial.

Since we feel the O'Neal case is controlling in this matter, we will analyze our situation using the formulations announced in *O'Neal.*

■ What tribal remedies were available to the plaintiffs? A resolution of the tribal council was incorporated as part of the plaintiff's affidavit. This resolution was passed by a majority of tribal council members on August 8, 1973. Paragraph number 26 states in part, "A grazing permit can be canceled for cause, after due notice and an opportunity to be heard. The Land and Forestry Committee shall have the authority to revoke grazing permits, for cause, subject to the right of appeal to a quorum of the Tribal Council in session. The decision of the Tribal Council shall be final, and no further right of appeal shall exist." The above language clearly indicates that a tribal remedy did exist. There is nothing in the facts to show that the plaintiff either asked for or attended a revocation hearing before the Committee nor was any appeal ever taken from any decision of the Committee. Should an exhaustion requirement generally be applied in cases such as this? The Eighth Circuit has already answered this question more fully and authoritatively than we can. *O'Neal, supra.* It is appropriate to require exhaustion in this case. We anticipate a great surge in the number of civil cases arising on the reservations. It is not for the federal courts to become a general clearing house for these cases, but rather it is the function and affirmative obligation of the tribe in view of their unique ethnic and cultural patterns to exercise original jurisdiction in these matters. It appears to be the opinion of the *O'Neal* court that tribal remedies should be pursued whenever and wherever possible; indeed, the exceptions to the exhaustion requirement which the court noted, were extreme. Exhaustion will not be necessary when the requirement would work irrevocable and immediate harm to the individual, when the individual's claim would be severely diminished or when a proper tribal forum does not exist. It has been argued that harm would come to the plaintiff in this case if we do not hear the claim but we are ever mindful of the need to strengthen the tribal remedies, to protect the rights of future Indian plaintiffs, and to expedite the satisfaction of claims on the reservations.

■ The plaintiff has firmly argued that we should accept jurisdiction and hear the case on its merits. She cites for authority the case of Johnson v. Lower Elwha Tribal Community, 484 F. 2d 200 (9th Cir. 200). While the above cases is closely on point to the matter before us, it is only of persuasive value and therefore we are constrained to follow, and are convinced that we should follow the *O'Neal* case.

We have left one tribal remedy undiscussed, and that is the tribal court. In plaintiffs' argument before the Court, she stated that the tribal court judge had been of the opinion that the tribe would not consent to suit. The *O'Neal* court stated that plaintiffs should seek the consent of the tribe; they did not say that it should be assumed no consent will be given. Further, the plaintiff might have sued defendant Fast Horse in Tribal Court for an adjudication of their respective rights to the land in question.

■ We find that appropriate tribal remedies do exist; we further find that the plaintiff failed to exhaust these remedies. We therefore remand this case to the Land and Forestry Committee of the Tribal Council and instruct the committee to grant a full due-process hearing to the plaintiff and defendant Fast Horse including a minimum notice of three days to the interested parties. The right of appeal to the Tribal Council, if desired, shall be granted to the party receiving the adverse decision. Both the Committee and the Tribal Council, if an appeal is taken, shall keep a record of the proceedings before them. If a hearing is denied to the parties, or if elementary due process requirements are not met, then this Court will proceed to hear the case on its merits. The Temporary Restraining Order granted by this Court is revoked, but if the

plaintiff is evicted before a hearing is held, this Court will entertain another motion for a temporary restraining order.