**Webster TWO HAWK and Leo Cordier**

v.

**ROSEBUD SIOUX TRIBE et al.**

**No. CIV 75–3023.**

United States District Court,
D. South Dakota.

Sept. 15, 1975.

Terry L. Pechota, S. D. Legal Services, Anita Remerowski, Mission, S. D., for plaintiffs.

Mario Gonzalez, Martin, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

Plaintiffs bring this action pursuant to 25 U.S.C. § 1302, the 1968 Indian Bill of Rights, seeking injunctive and declaratory relief preventing the defendants from disqualifying Plaintiff Webster Two Hawk as a candidate for President of the Rosebud Sioux Tribe. Plaintiff Webster Two Hawk claims that defendants have violated his constitutional rights of due process and equal protection of the law as guaranteed by 25 U.S.C. § 1302(8). Plaintiff Leo Cordier claims that he is an eligible voter for the office of Tribal President and the defendants' disqualification of Webster Two Hawk as a presidential candidate in violation of 25 U.S.C. § 1302(8) denies him the right to vote for the candidate of his choice. Thus, plaintiffs' complaint properly invokes the jurisdiction of this Court under 28 U.S.C. § 1343(4) and the Indian Civil Rights Act (25 U.S.C. §§ 1301–1303) against the tribe and governmental subdivisions thereof, but not against tribal members acting in their individual capacities. *Spotted Eagle v. Blackfeet Tribe*, 301 F.Supp. 85, 89–90 (D.Mont.1969). The plain language on the face of the statute that "no Indian tribe in exercising

powers of self-government shall . . ." engage in the prohibited conduct of paragraphs (1) through (8) makes it clear that Congress intended to constrain only actions of the tribe and tribal bodies. Therefore this Court has no jurisdiction over defendants named as individuals. *Means v. Wilson*, 383 F.Supp. 378 (D.S.D.1974); 25 U.S.C. § 1302(1)–(8). The remaining named defendants over which this Court has jurisdiction are the Rosebud Sioux Tribe; Robert Burnette, acting in his official capacity as President; the Tribal Election Board; and Alfred Left Hand Bull, Frank Bear Heels, Louis Leader Charge, Justin White Hat and Bernard Flood, acting in their official capacity as members of the Tribal Election Board.

The following factual framework is necessary to an understanding of the present controversy. On June 20, 1975, Plaintiff Two Hawk, who was then employed as a teacher at Vermillion, South Dakota, which is located some distance from the reservation, was selected by the Rosebud Sioux Tribal Council to fill the recently vacated council position of representative from the Horse Creek Community. On July 11, 1975, Plaintiff Two Hawk filed a nominating affidavit for his candidacy for President of the Rosebud Sioux Tribe. On July 30, 1975, Robert Burnette challenged the validity of Webster Two Hawk's candidacy on the grounds that Two Hawk did not in fact meet the requirements of residency. On August 12, 1975, the Tribal Election Board informed Plaintiff Two Hawk that he was disqualified as a presidential candidate. Plaintiffs filed this action on August 15, 1975.

The present controversy swirls around a single question: Does Webster Two Hawk meet the residency standard of candidacy required by Art. III, § 5 of the Constitution of the Rosebud Sioux Tribe and Section 2(3) of the Rosebud Sioux Tribal Election Ordinance R.B. 75–05? This question is for the Rosebud Sioux Tribe to decide without interference from this Court absent a show-

ing that the Tribe, in deciding the question, violated the rights granted plaintiffs under the Indian Civil Rights Act.

In order to end confusion in this case among the parties and their attorneys some initial discussion of the relationship between the Rosebud Sioux Tribe, this Court, and the Indian Civil Rights Act is necessary.

 In the well-written decision of *Martinez v. Romney*, 402 F.Supp. 5 (D.N.Mex.1975), the authorities collected and discussed there establish that "Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory," *Worchester v. Georgia,* 6 Pet. [31 U.S.] 515, 557, 8 L.Ed. 483 (1832), and tribal immunity is based on the sovereignty of the tribe, *Worchester, supra,* at 559; they are "a separate people" possessing "the power of regulating their internal and social relations . . ." *United States v. Kagama,* 118 U.S. 375, 381–382, 6 S.Ct. 1109, 1113, 30 L.Ed. 228 (1886); *McClanahan v. Arizona State Tax Commission,* 411 U.S. 164, 173, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). This sovereign power, however, is subject to limitation by Congress and as a practical matter Indian tribes are sovereign only to the extent Congress has allowed them to remain so. *Worchester v. Georgia, supra; Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); *Native American Church v. Navajo Tribal Council,* 272 F.2d 131 (10th Cir. 1959); *Colliflower v. Garland,* 342 F.2d 369 (9th Cir. 1965); *Groundhog v. Keeler,* 442 F.2d 674 (10th Cir. 1971); *Seneca Constitutional Rights v. George,* 348 F.Supp. 51 (W.D.N.Y.1972); *United States v. Blackfeet Tribe of Blackfeet Indian Reservation,* 364 F. Supp. 192 (D.Mont.1973); *Lohnes v. Cloud,* 366 F.Supp. 619 (D.N.D.1973). Under the Indian Commerce Clause Congress has plenary authority over Indians. U.S.Const. Art. I, § 8, *Means v. Wilson,* 74–1841, 522 F.2d 833 (8th Cir. 1975).

The United States Constitution and the amendments thereto do not limit the powers of tribal government. *Talton v. Mayes,* 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896); *Wounded Head v. Tribal Council of Oglala Sioux Tribe,* 507 F.2d 1079 (8th Cir. 1975); *Barta v. Oglala Sioux Tribe of Pine Ridge Reservation,* 259 F.2d 553 (8th Cir. 1958), *cert. denied,* 358 U.S. 932, 79 S.Ct. 320, 3 L.Ed.2d 304 (1959). In order to remedy this situation and give persons subject to tribal authority enforceable rights, Congress used its plenary authority to enact the Indian Civil Rights Act. Through enactment of the Indian Civil Rights Act, 25 U.S.C. § 1302, and to the extent of the limitations contained therein, Congress abrogated historical tribal immunity from suit. *Daly v. United States,* 483 F.2d 700, 705 (8th Cir. 1973); *Luxon v. Rosebud Sioux Tribe,* 455 F.2d 698, 700 (8th Cir. 1972) (per curiam). Jurisdiction over claims presented under the Indian Civil Rights Act is conferred upon the federal courts by 28 U.S.C. § 1343(4). *Daly, supra; Luxon, supra; White Eagle v. One Feather,* 478 F.2d 1311 (8th Cir. 1973) (per curiam); *Johnson v. Lower Elwha Tribal Community,* 484 F.2d 200 (9th Cir. 1973); *Means v. Wilson,* 74–1841, 522 F.2d 833 (8th Cir. 1975).

 The above principles of law as applied to this case simply mean that the Rosebud Sioux Tribe has the duty to decide, and is free to decide without outside interference, the question of whether Webster Two Hawk in fact meets the residency standard of candidacy required by Art. III § 5, of the Constitution of the Rosebud Sioux Tribe and Section 2(3) of the Rosebud Sioux Tribal Election Ordinance, R.B. 75–05. Tribal sovereignty, in light of the Indian Civil Rights Act, means that the Rosebud Sioux Tribe can make and enforce its decisions without regard to whether the Federal Courts consider those decisions wise. *Martinez v. Romney,* 5 F.Supp. 402 (D.N.Mex.1975). This Court has the power to intervene in the tribal

self-governing process only when it is shown in a proper case that the tribe or a governmental subdivision thereof has violated one or more of the rights guaranteed by the Indian Civil Rights Act. Even in a proper case that invokes federal jurisdiction, this Court in *Clark v. Land and Forestry Committee of Cheyenne River Sioux Tribual Council*, D.C., 380 F.Supp. 201 (1974), and the Eighth Circuit Court of Appeals in *O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140 (8th Cir. 1973), made it very clear that normally the plaintiff must make every effort to exhaust available administrative and judicial tribal remedies. This Court agrees with the Eighth Circuit Court of Appeals that:

> A general exhaustion requirement in cases such as this will do much to strengthen tribal governments, including tribal courts, and, thereby aid the reservation Indian in maintaining a distinct cultural identity. *O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140, 1148 (8th Cir. 1973).

Thus, the general exhaustion requirement allows the tribe to complete, within the tribal system of government, an ongoing process of deciding an issue initially, and deciding that issue again on rehearing or on appeal, and allows the tribe to reach a final decision without premature intrusion by outside authority.

█ In the judgment of this Court, Plaintiff Two Hawk has now completely exhausted all tribal remedies available to him. On August 12, 1975, the Tribal Election Board provided Plaintiff Two Hawk with an opportunity to be heard. On August 12, 1975, the Election Board entered their written decision that Two Hawk did not meet the residency requirements and was therefore disqualified as a candidate. On August 14, 1975, Plaintiff Two Hawk filed suit in Rosebud Tribal Court. Tribal Judge Cecil Scott dismissed the action on the ground that the tribe cannot be sued in tribal court without its consent. *Rosebud Re-*

*vised Law and Order Code*, ch. 2 § 2. Although the Rosebud Code provides in ch. 1, § 6 for a Court of Appeals and in ch. 1, § 6.1 for a right of appeal, in the judgment of this Court exhaustion of this tribal appellate remedy would be futile. Evidence was adduced before this Court that primarily due to lack of funds the Court of Appeals has not heard a case in fifteen years. At the hearing to determine plaintiff's request for a temporary restraining order before this Court on August 20, 1975, and after evidence was offered by both plaintiff and defendant, all parties agreed in writing that the Tribal Election Board would give Plaintiff Two Hawk a rehearing on August 22, 1975. After the agreed-upon hearing before the Election Board, plaintiffs again filed suit in tribal court and again Judge Cecil Scott dismissed the action on the basis of tribal immunity. Relying upon Art. III, § 8 of the Rosebud Constitution that "The Rosebud Sioux Tribal Council shall be the sole judge of the constitutional qualifications of its own members," the Tribal Council held a special session to determine if Plaintiff Two Hawk had in fact met the residency requirements of his presidential candidacy. The Tribal Council decided that he did not. Plaintiffs requested the Council to waive tribal immunity and permit the Tribal Court to determine the issue. The Tribal Council refused. The decision of the Tribal Election Board and Tribal Council is clear and final and this Court finds that all tribal remedies available to plaintiffs have been exhausted.

█ With these threshold considerations disposed of this Court directs its attention to the merits of plaintiffs' complaint under 25 U.S.C. § 1302(8). It is important to reiterate an earlier point that it is the duty of the tribe and not of this Court to determine whether or not Plaintiff Two Hawk satisfies the residency requirements for presidential candidacy. It is the duty of this Court to determine whether the tribe in the process of deciding that question violated

rights guaranteed by 25 U.S.C. § 1302 (1) or (8) as claimed by plaintiffs. Applicable sections of the statute provide:

No Indian tribe in exercising powers of self-government shall—

(1) make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances;

(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.

■ Plaintiff Two Hawk in his first claim for relief asserts that defendants failed to enforce the provisions of Election Ordinance R.B. 75–05 in disqualifying him as a candidate for tribal office and thereby deprived him of due process of law as guaranteed by 25 U.S.C. § 1302 (8). Plaintiff Two Hawk in his second claim for relief asserts that defendants denied him the opportunity to be heard before disqualifying him as a candidate and thereby again denied him due process of law as guaranteed to him by 25 U.S.C. § 1302(8). Plaintiffs' first and second claim shall be considered together since both concern alleged deprivations of procedural due process granted by Election Ordinance 75–05 and by 25 U.S.C. § 1302(8). These claims may have been meritorious on August 15, 1975, when this action was filed, and may have been meritorious on August 20, 1975, when this Court began the first hearing in this case to determine whether or not a temporary restraining order should be granted. At the August 20 hearing, however, after testimony had been received by plaintiffs' and defendants' witnesses, counsel for both parties moved this Court to receive into evidence a written agreement entered into by all parties. *See, Stipulation,* Civ75–3023, docket entry 5, August 22, 1975. The agreement was approved, received and made a part of the record in this case. Through this stipulation the parties agreed that the defendants would give Plaintiff Two Hawk another opportunity on August 22, 1975, before the Tribal Election Board, to present evidence on his candidacy qualifications. This Court finds that it was further agreed and understood that the August 22 rehearing would afford the defendants with an occasion to provide plaintiffs with proper notice and opportunity to be heard in compliance with the requirements of due process. The transcript of the extensive August 22 rehearing before the Election Board reveals that all parties took full advantage of the agreement. This Court finds that plaintiffs were given proper notice and full opportunity to be heard. *Clark v. Land and Forestry Committee of the Cheyenne River Sioux Tribal Council,* D.C., 380 F.Supp. 201, 204 (1974). Plaintiffs secured representation by counsel, called witnesses and presented evidence in their behalf, made objections, and cross examined witnesses. A complete written transcript was maintained and is a part of the record in this case. See Court's Exhibit #1, CR75–3023, August 22, 1975. Since plaintiffs stipulated and agreed that defendants should be permitted to conduct a rehearing, and since this Court finds that the rehearing held on August 22, 1975, substantially satisfies the requirements of due process of law as guaranteed by 25 U.S.C. § 1302(8), this Court does not decide whether the first hearing given Plaintiff Two Hawk by the Election Board on August 12 complied with due process. Having agreed to a rehearing, the plaintiffs cannot now be heard to complain that the initial hearing violated their procedural due process rights. Plaintiffs' first and second claims are therefore without merit.

■ In Plaintiff Two Hawk's third claim for relief he asserts "that insofar as he was disqualified by the Election Board for alleged non-residency while other candidates' applications were not reviewed according to the same standard he has been denied equal protection of the law guaranteed to him by the Indian Civil Rights Act." *See*

Plaintiffs' Original Complaint, para. 22. Because plaintiffs' ninth claim for relief is closely related, it will be taken out of numerical order and discussed here with plaintiffs' third claim. In the ninth claim for relief, Plaintiff Two Hawk alleges that the Election Board violated his right to equal protection and due process by only testing the eligibility of those candidates challenged and by failing to test the eligibility of candidates with similar circumstances. Plaintiffs do not claim that Election Ordinance R.B. 75–05 violates 25 U.S.C. § 1302. Section 12 of R.B. 75–05 establishes the duties of the Election Board and provides in paragraph (D) that:

> The Election Board shall promptly review all *filings* for office, whether challenged or not, to test the eligibility of each person to be a candidate. (Emphasis added.)

Section 3 of R.B. 75–05, entitled *Filing For Office*, provides in paragraph (A) that:

> Any enrolled member of the Tribe *meeting the qualifications* set forth in Section 2 hereof may become a candidate for election to Tribal Council by *filing* a nominating affidavit with the Election Board . . . .

Section 2 of R.B. 75–05 entitled *Eligibility for Tribal Office* provides:

> Any enrolled member of the Rosebud Sioux Tribe shall be eligible to seek and hold membership on the Tribal Council, provided:
>
> (1) The candidate is at least twenty-five (25) years of age.
>
> (2) The candidate has not been found guilty by the Tribal Council of misconduct in tribal affairs.
>
> (3) A candidate for President or Vice-President must have been physically residing on the Rosebud Reservation for at least one year next preceding the date of the primary election.
>
> (4) A candidate for community representative must have been physically residing in the community of his candidacy for at least one year next preceding the date of the primary election, *provided, however*, that if by reason of tribal employment, or tribal office, a candidate for community representative is absent from the community of his candidacy and residing in Rosebud Community, such candidate shall be treated as living in the community of his candidacy rather than Rosebud Community.

In the opinion of this Court the above provisions of Ordinance R.B. 75–05, when read together, and when understood in light of the testimony presented in this case, require a candidate to file a nominating affidavit with the Election Board. In the nominating affidavit the candidate must set forth his Section 2 qualifications and state, under criminal penalty for perjury, that such qualifications are true. This nominating affidavit is the filing that the Election Board is required to promptly review under Section 12(D). At this stage of testing candidate's eligibility, the duty of the Election Board is simply to read and pass upon facts set out in the nominating affidavit and in any documents attached thereto. The Election Board is entitled to rely at this point on the candidate's required representation that all facts stated in the affidavit are true. Unless some member of the Election Board has personal knowledge that a candidate's signed statement of his qualifications is false, and unless a candidate indicates in his application that certain requirements have not been met, the Election Board has no duty to inquire further into a candidate's qualifications. With this understanding of the Election Board's duty to promptly review all filings, it is clear that plaintiff's third claim is without merit. Simply stated, the equal protection clause of the Indian Civil Rights Act requires that tribal law be applied with an even hand, rather than being arbitrarily enforced in some cases and not in others. Tribal law must be applied equally to all persons similarly situated. *Wounded Head v. Tribal Council of Oglala Sioux Tribe,* 507 F.2d 1079 (8th Cir. 1975); *Crowe v. Eastern Band*

*of Cherokee Indians, Inc.*, 506 F.2d 1231 (4th Cir. 1974); *Laramie v. Nicholson*, 487 F.2d 315 (9th Cir. 1973), *cert. den.*, *Tonasket v. Thompson*, 419 U.S. 871, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974). In the opinion of this Court, all persons who made application for candidacy by filing a nominating petition were similarly situated. This Court finds that the Election Board reviewed each filing promptly. The Election Board approved Plaintiff Two Hawk's application based upon his stated qualifications and his name was placed on the list of eligible candidates. Plaintiff Two Hawk has simply not shown by competent evidence that his nominating affidavit was treated differently than that of other applicants. It is elementary that competent evidence must be shown that persons similarly situated were treated unequally before judicial examination of the seriousness of such established disparities is triggered by the equal protection clause. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S. Ct. 1278, 36 L.Ed.2d 16 (1973); *Kramer v. Union Free School District*, 395 U.S. 621, 627, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583 (1969).

The standard used by the Election Board to review residency qualifications of applicants is set out in Section 2(3) and (4) of R.B. 75–05. This standard requires that the applicant "must have been physically residing on the Rosebud Reservation for at least one year next preceding the date of the primary election." R.B. 75–05 was duly passed June 19, 1975, by the Tribal Council amending former election ordinance 67–02 "to clarify and establish more orderly rules and procedures governing nominations and elections of candidates to tribal office." The Tribal Council has adequate authority to enact this election ordinance. *See* Rosebud Sioux Tribal Constitution, Art. IV § 1 (s). R.B. 75–05 § 2(3) and (4) clarifies Art. III § 5 of the Constitution. *See* Challenger's Exhibit No. 14, August 22, 1975; Court's Exhibit No 1, Civ.75–3023, August 22, 1975. From the testimony presented, it is clear that the Election Board understood the "physically residing" requirement of R.B. 75–05 § 2(3) and (4) to mean physically living on the reservation and physically living within the community claimed. In determining residency requirements on a case by case basis, the Election Board considered many factors including whether the candidate during the previous twelve months was actually present on the reservation and in the community claimed; the family of the candidate was actually present on the reservation and in the community claimed by the candidate; location of school attended by candidate's children; jurisdiction where the candidate voted; where the candidate's automobiles were registered; where the candidate received his mail; where the candidate worked and made a living; where the candidate purchased groceries; and where the candidate and the candidate's family ate and slept. The Board's understanding of the residency requirement set forth in R.B. 75–05 § 2(3) and (4) agrees with the requirements of Art. III § 5 of the Rosebud Constitution that a qualified candidate "must have been *living on* the reservation" and "must have been *living in* the community of his candidacy for at least one year next preceding the date of the primary election." *See* candidacy hearing, September 2, 1975; Defendants' Exhibit C, August 11, 1975; R.B. 75–05 § j; Defendants' Exhibit D. This Court finds that during initial review of candidate filings, the Election Board properly understood the standard of residency and applied that standard equally to all applications. *See* Plaintiffs' Exhibit 3, Civ.75–3023, September 12, 1975.

When the Election Board has completed its initial review of filings pursuant to R.B. 75–05 § 12(D), its eligibility testing duties are completed absent a challenge of any candidate by any qualified voter under R.B. 75–05 § 12(E). Only upon challenge does the Election Board have a duty to make

further investigation into the qualifications of a candidate. This Court finds that as to those candidates challenged, the Election Board complied with R.B. 75–05 § 12(E) and applied the residency standard of R.B. 75–05 § 2(3) and (4) equally. As to those candidates not challenged, the Election Board had no duty to conduct a hearing, call witnesses, or otherwise obtain additional evidence concerning the qualifications of unchallenged candidates. Plaintiffs' ninth claim is therefore without merit.

 ██ Plaintiff Two Hawk in his fifth claim asserts that defendants, in challenging and disqualifying his candidacy after he was seated on the Tribal Council as a qualified representative of Horse Creek Community, violated his due process rights under 25 U.S.C. § 1302(8). Plaintiff Two Hawk further claims that defendants failed to challenge or disqualify other candidates and thereby violated his due process rights guaranteed by 25 U.S.C. § 1302(8). This Court finds from the evidence presented in this case, that on June 19, 1975, the Tribal Council honored a request from Horse Creek Community and seated Plaintiff Webster Two Hawk as Councilman to fill the unexpired term of Horse Creek representative without certification or finding that Plaintiff met the one-year residency requirement. *See* Challenger's Exhibit No. 11, p. 23, June 19, 1975; Defendants' Exhibit D, pp. 2, 3, 4. The Rosebud Tribal Constitution does not require a finding of residency when a person is appointed to fill an unexpired term of councilman with less than one year of the term remaining. *See* Art. III, § 6, Rosebud Constitution. In addition, it is important to note that the present defendants to this action did not challenge Plaintiff Two Hawk. In fact, the Election Board, upon initial review of candidate's filings, approved plaintiff's application and placed his name on the approved list of candidates. The challenge of Plaintiff Two Hawk's candidacy was made by Robert Burnette as an individual qualified voter in accordance with R.B. 75–05 § 12(E) and

not in his official capacity as President of the Rosebud Sioux Tribe. Thus, the first part of plaintiffs' fourth claim for relief is without merit. The second part of plaintiffs' fourth claim is also without merit since the Election Board, absent a challenge, has no duty to investigate a candidate's qualifications beyond the facts stated by the candidate, or beyond knowledge possessed by the Election Board that facts stated by the candidate are false. Through R.B. 75–05 § 12(E), the Tribal Council placed the primary duty of challenging candidates on members of the tribe who are qualified to vote. The Election Board considered those candidates which it approved qualified and therefore had no reason to challenge under R.B. 75–05 § 12(D). The list of approved candidates was published for all tribal members to examine. If plaintiffs had knowledge that certain candidates were not qualified, they had an obligation to challenge under R.B. 75–05 § 12(E). See Defendants' Exhibit D, p. 27. Failure of plaintiffs or other members of the tribe to challenge candidates and trigger a full investigation does not make out a violation of R.B. 75–05 or 25 U.S.C. § 1302(8) against the defendants. Thus, the second part of plaintiffs' fourth claim is also without merit.

 Plaintiffs assert in their fifth claim that defendants, in disqualifying Webster Two Hawk as a candidate, have deprived plaintiffs of their freedom of association, right to assemble, and right to petition under 25 U.S.C. § 1302(1). Plaintiffs have completely failed to support this claim with competent evidence. It appears from statements of defendants' counsel that both plaintiffs have met the requirements of R.B. 75–05 § 4 and have been certified to vote in the 1975 election. Plaintiff Cordier's disappointment in not being able to vote for Webster Two Hawk for Tribal President does not make out a 25 U.S.C. § 1302(1) violation against defendants. Plaintiffs' reliance on *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) to sustain their theory of "political per-

secution" and "political harassment" is misplaced. This Court does not deal in personalities but rather grounds its decisions on properly established facts and upon the rule of law. Under Art. III, § 5 of the Rosebud Constitution and under Ordinance R.B. 75–05(3), Plaintiff Two Hawk could qualify as a presidential candidate by meeting the requirements contained therein. The Election Board on August 22, 1975, and the Tribal Council on August 27, 1975, decided that he was not so qualified. Residency requirements for candidacy, equally applied, do not violate 25 U.S.C. § 1302(1) or (8). Residency requirements for candidates serve the important tribal purpose of preventing persons disinterested in tribal affairs who live away from the reservation, and who are not involved in or informed of daily tribal events, and who have stronger interests away from the Rosebud Reservation, from returning at election time and gaining control of the tribe. Therefore plaintiff's fifth complaint has no merit.

▓▓▓ Plaintiffs in their sixth complaint allege that their right of due process of law as guaranteed by 25 U.S.C. § 1302(8) was violated because they were denied a hearing before an unbiased, neutral and independent board educated in the law. Plaintiffs have completely failed to present any evidence to establish that the Election Board or the Tribal Council, which granted plaintiffs hearings, decided the issue of Plaintiff Two Hawk's qualifications for candidacy on the basis of bias or prejudice. Absent such evidence and in light of the extensive hearings granted plaintiffs, this Court finds that the Election Board and the Tribal Council made their decisions independently and in good faith. Plaintiffs' cited no authority and this Court has found no support for plaintiffs' claim that due process requires members of the Election Board and Tribal Council to be learned in the law. Thus, plaintiffs' sixth claim, in the judgment of this Court, is without merit.

▓▓ Plaintiffs allege in their seventh claim they were denied due process of law secured to them by 25 U.S.C. § 1302(8) because the Election Board placed the burden on Plaintiff Two Hawk to prove his residency qualifications and because the Election Board allowed the challenger to introduce evidence in support of matters outside the challenger's affidavit. Upon careful review of the transcript of the August 22, 1975, hearing before the Election Board, it is the opinion of this Court that plaintiffs' seventh claim is without merit. Although both parties were allowed wide latitude in presenting information and argument, and although certain information presented would probably be ruled irrelevant in a court of law, it appears that no prejudice accrued to plaintiffs since the Election Board grounded its decision on facts relevant to the residency issue. Plaintiffs have presented no evidence that the Election Board relied upon or even considered irrelevant evidence in reaching its decision. Plaintiffs cite no authority for their claim that due process is violated by requiring a challenged candidate to respond to the factual information contained in the challenger's affidavit. The procedure contemplated by R.B. 75–05 § 12(E), and the procedure followed by the Election Board requires the challenger to present adequate evidence to support the challenge, and if not sufficiently supported the claim may be dismissed. Only when the challenge is so supported does the burden of going forward shift to the candidate. R.B. 75–05 § 12(E) requires a civil administrative hearing not a criminal proceeding. The procedure appears to be a reasonable means of establishing truth and in the judgment of this Court does not violate 25 U.S.C. § 1302(8).

▓▓▓ Plaintiffs in their eighth claim allege that Plaintiff Two Hawk's due process rights under 25 U.S.C. § 1302(8) were violated because the August 22, 1975, decision of the Election Board was unsupported by evidence and therefore was arbitrary and unreasonable. The

plaintiffs' eighth claim is also without merit. The transcript of the Election Board's August 22, 1975, hearing and the exhibits received clearly demonstrate that much information was presented, and if believed, provides substantial evidence to support the Election Board's decision. *See* Court's Exhibit 3; Challenger's and Petitioner's Exhibits.

Based upon the foregoing reasons, the temporary restraining order granted August 27, 1975, is hereby dissolved. The decisions of the Rosebud Sioux Tribal Election Board and the Rosebud Sioux Tribal Council disqualifying Plaintiff Webster Two Hawk as a presidential candidate stand. In the process of arriving at their decisions, the Election Board and the Tribal Council have not been shown by plaintiffs to have violated the provisions of 25 U.S.C. § 1302 (1) or (8). The Rosebud Sioux Tribal election may now proceed. The plaintiffs' request for permanent injunctive and declaratory relief pursuant to Rule 65 of the Federal Rules of Civil Procedure is hereby denied.

The foregoing Memorandum Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.